# IN THE UNITED STATES DISTRICT COURT
# DISTRICT OF MASSACHUSETTS

| | |
|---|---|
| **TRUSTEES OF BOSTON UNIVERSITY,**<br>     *Plaintiff,*<br>v.<br><br>**EVERLIGHT ELECTRONICS CO., LTD.,**<br>**ET AL.,**<br>     *Defendants.* | **Consolidated Civil Action No.**<br>**12-cv-11935-PBS** |
| **TRUSTEES OF BOSTON UNIVERSITY,**<br>     *Plaintiff,*<br>v.<br><br>**EPISTAR CORPORATION, ET AL.,**<br>     *Defendants.* | **Civil Action No. 12-cv-12326-PBS** |
| **TRUSTEES OF BOSTON UNIVERSITY,**<br>     *Plaintiff,*<br>v.<br><br>**LITE-ON INC., ET AL.,**<br>     *Defendants.* | **Civil Action No. 12-cv-12330-PBS** |
| **TRUSTEES OF BOSTON UNIVERSITY,**<br>     *Plaintiff,*<br>vs.<br><br>**AMAZON.COM, INC., a/k/a**<br>**AMAZON.COM AUCTIONS, INC.**<br>     *Defendant,* | **Civil Action No. 13-cv-11097-PBS** |
| **TRUSTEES OF BOSTON UNIVERSITY,**<br>     *Plaintiff,*<br>v.<br><br>**APPLE, INC.**<br>     *Defendant.* | **Civil Action No. 13-cv-11575-PBS** |

| | | |
|---|---|---|
| **TRUSTEES OF BOSTON UNIVERSITY,** | ) | Civil Action No. 13-cv-10659-PBS |
| *Plaintiff,* | ) | |
| v. | ) | |
| | ) | |
| **SAMSUNG ELECTRONICS CO., LTD.,** | ) | |
| **SAMSUNG ELECTRONICS AMERICA, INC.,** | ) | |
| **SAMSUNG LED CO., LTD.,** | ) | |
| **SAMSUNG LED AMERICA, INC.,** | ) | |
| **SAMSUNG ELECTRO-MECHANICS CO.,** | ) | |
| **LTD., and SAMSUNG ELECTRO-MECHANICS** | ) | |
| **AMERICA, INC.,** | ) | |
| *Defendants.* | ) | |
| | ) | |
| **TRUSTEES OF BOSTON UNIVERSITY,** | ) | Civil Action No. 12-cv-11938-PBS |
| *Plaintiff,* | ) | |
| vs. | ) | |
| | ) | |
| **SEOUL SEMICONDUCTOR CO., LTD.,** | ) | |
| **SEOUL SEMICONDUCTOR, INC., and** | ) | |
| **SEOUL OPTODEVICE CO., LTD.** | ) | |
| *Defendants.* | ) | |
| | ) | |
| **TRUSTEES OF BOSTON UNIVERSITY,** | ) | Civil Action No. 13-cv-11105-PBS |
| *Plaintiff,* | ) | |
| vs. | ) | |
| | ) | |
| **ARROW ELECTRONICS, INC.,** | ) | |
| **COMPONENTSMAX, INC.,** | ) | |
| **NRC ELECTRONICS, INC.,** | ) | |
| **NU HORIZONS ELECTRONICS CORP.,** | ) | |
| *Defendants* | ) | |
| | ) | |

**PLAINTIFF'S STATUS REPORT**

On July 31, 2013 and August 1, 2013, this Court ordered the parties to submit a Status Report on or before August 5, 2013 (collectively the "Order"). Pursuant to the Order, Plaintiff Trustees of Boston University ("Boston University" or "Plaintiff") hereby submits this Status Report, informing the Court of the progress and activities of each of the various related cases, and would respectfully show this Court as follows:

## I.    OVERVIEW

Boston University first filed suit against the Everlight Defendants in October of 2012. There are ten live cases, three of which have been previously consolidated for pretrial discovery. Defendants have delayed this case at every turn, filing multiple unsuccessful motions to stay, an unsuccessful motion to dismiss, an unsuccessful motion to revoke Boston University's counsel's pro hac vice admission, an unsuccessful motion to strike preliminary infringement contentions—all while refusing to provide any meaningful discovery. Now, Defendants again seek to delay the case pending addition of other parties, while withholding precisely the discovery necessary to do so.

## II.    ISSUES FOR DISCUSSION

(1) Early disclosure of customer identification to facilitate addition of parties.

(2) The appropriate parameters of consolidation and common discovery limits and deadlines.

(3) The entry of a global protective order.

(4) The objections to the entry of the Magistrate's Order regarding sanctions against Boston University.

(5) Boston University's Motion to Amend its complaint in the Samsung case.

### III.  FACTUAL BACKGROUND

#### A. History of Asserted Patents

On March 18, 1991, Boston University Professor Theodore D. Moustakas ("Moustakas") filed a patent application identifying highly insulating gallium nitride light-emitting diodes ("GaN LEDs") capable of emitting blue and ultraviolet light and the method of making said GaN LEDs. From this patent application, the United States Patent and Trademark Office ("PTO") eventually issued United States Patent Numbers 5,686,738 ("the '738 patent") and 6,953,703 ("the '703 patent"). Pursuant to university policy, Dr. Moustakas assigned these patents to Boston University.

#### B. Underlying Technology Covered by Asserted Patents.

In general, the asserted patents cover GaN-based wide-band-gap semiconductors used for optoelectronic devices such as blue LEDs and laser diodes. Industry reports predict that more than a billion GaN LEDs will ship in 2013 and revenue will pass the $10B mark. In fact, GaN LEDs account for 85 percent of total revenues in the LED industry, dominating key applications such as backlighting of consumer applications (i.e., computer screens, tablets, smart phones, TVs, etcetera) and general lighting. Given the market demand for GaN LEDs, infringement of seminal patents, such as the '738 or '703 patents, which cover the underlying technology, wrongfully deprives Boston University of hundreds of millions dollars in royalties owed.

#### C. Boston University's Enforcement Efforts.

On June 25, 2012, the rights to enforce the licensed patents reverted from a former licensee to Boston University. Boston University investigated the major market manufacturers of GaN devices, and then researched product offerings to determine infringement based upon part specifications, technical literature, publically available information, and/or the reverse

engineering of confirmable manufacturer parts. Boston University has been forced to purchase and reverse engineer numerous products to determine if they infringe. But, the ability to identify infringing devices and associated manufacturers was and continues to be hampered by the fact that individual GaN devices—because of their tiny size—rarely, if ever, include patent numbers, product numbers or any other type of commercial markings. Accordingly, tracing the chain of liability from known manufacturers to direct infringers is extremely cumbersome, difficult, and expensive.

## II.     PROCEDURAL POSTURE

### A.  Defendants' Attempts to Obscure the Identity of Customers.

In this industry, it is common for manufacturers to sell infringing devices to other partly- or wholly-owned entities in Asia, who include them in component devices (televisions, computer monitors, smart phones, light fixtures, etcetera) and who then sell these finished consumer products to American companies. For instance, a review of Defendant Everlight Electronics Co., Ltd's most recent annual consolidated financial report reveals its corporate ownership and structure is complex and incestuous as it relates to the manufacture of LED-related devices ('chips' or 'semiconductors'), LEDs, and related products in which LEDs are one of several components, identifying more than twenty (20) entities (and undisclosed third parties) with activities related to LEDs, making it virtually impossible to trace the flow of infringing devices.[1] A lack of visibility regarding the flow of infringing devices emboldens the "illicit trade of intellectual property-protected goods [which] reduces incentives for innovation and investment."[2] One of the critical changes that needs to be implemented in order to reduce the

---

[1] *Defendant Everlight Elec. Co., Ltd's 2011 Consolidated Financial Statements,* at p. 8-13, *available at* http://www.everlight.com/finanicalreports/en/2011ConsolidatedFinancialReport.pdf (last visited August 5, 2013)
[2] "Global Risks 2011," World Economic Forum: January 2011, at p. 22, *available at* http://reports.weforum.org/global-risks-2011, (last visited August 5, 2013). "The negative effects of corruption,

currently growing illicit trade of protected goods is transparency of financial flows and physical movement of goods.[3]  "More responsible monitoring of supply chains could have a large impact."[4]

Indeed, allowing foreign defendants to skate liability for intellectual property violations because they have implemented a type of corporate shell transfer system is not only a recognized global problem, but it also gives rise to many evils beyond just uncompensated infringement of patent rights.  "The problem is compounded by a lack of transparency.  *Asian electronics supply chains are notoriously murky*.  Contractors shift orders across borders and between factories and subcontractors, and many major brands treat their supplier list as top-secret [and vice versa].  That makes it difficult to pin down who's making what for whom and, therefore, difficult to fix blame when allegations of [violations] come to light."[5]  While foreign defendants may have a legal right to deny liability for production of infringing devices, their denial is unjustified if they know their products are ultimately destined for the United States.  35 U.S.C. §271(b).  Additionally, if Defendants claim not to know where the accused products go upon leaving their possession, they will have the burden to prove it, which entails disclosing where the accused products go.  Yet, none of the defendants who have served Rule 26 Initial Disclosures to date have identified a witness who will provide any of that information.  As the Court recognized at the July 19th Status Conferences, "if it's information that eventually will need to be provided

---

illicit trade, organized crime and fragility are easy to characterize but extremely difficult to quantify.  The opaqueness of this nexus of risk has resulted in too little attention and too few resources devoted to mitigating it, and the significance of this nexus of risks has increased considerably in recent years – in part because of global governance failures, as informal networks engage in legal and regulatory arbitrage.  Illicit trade is now thought to represent between 7 and 10% of the global economy – in some countries, illicit trade is the major source of income."  *Id.* at p. 23. This study estimated the market size of illicit trade of intellectually protected goods at $100 billion USD for electronics and $50 billion USD for software piracy.  *Id.*

[3] *Id.* at p. 24.
[4] *Id.*
[5] Johnathan Adams and Kathleen E. McLaughlin, "*Slaves for the Benefit of Americans*," GlobalPost, September 2010, at p. 2, *available at* http://honestvermont.com/blurb.php?dogNow=104437 (last visited August 5, 2013).

under Rule 26 anyway, we can accelerate it if that will help move the case along, but I wouldn't propose to expand the boundaries of Rule 26, in other words, either it's discoverable or it's not."

**B. Defendants' Attempts to Delay the Case.**

The clear defense agenda to delay the cases so as to prevent Plaintiff from being able to identify direct infringers is established by the collective actions of the various defendants: move to dismiss the actions, move to stay, refuse to produce information until a protective order is entered, and then fight tooth and nail on seemingly every term of a proposed protective order, or alternatively, withholding any position until the protective order issues raised in the Everlight consolidated cases are resolved before negotiating any further, but still, refusing to be bound by any resolutions reached by the Court in the consolidated Everlight case.  Similarly, when the various parties conducted their Rule 26(f) telephone conferences, each defendant sought to have slightly different terms with regard to scheduling and discovery limitations, but even then only after Plaintiff refused to agree to postpone the scheduling conference or pursuing discovery pending the determination of various motions to dismiss, motions to stay, and/or requests for Inter Partes Review.  The following chart summarizes defendants' conduct that consistently seeks to postpone some aspect of this case, either temporarily or permanently:

| Defendants | File Date | Service | Requested Ext. | Settlement Discussions | Answer Date | Motions or Review Requests | Discovery |
|---|---|---|---|---|---|---|---|
| Everlight | 10/17/12 | 11/8/12 | 11/29/12 (**90 days**) | Taiwan (1/21/13) | 2/8/13 | Defendant's Motion to Dismiss for Lack of Personal Jurisdiction (2/8/13); Defendant's Petition for Inter Partes Review (5/22/13); Defendant's Motion to Strike Plaintiff's Preliminary Infringement Contentions and Stay Discovery (5/23/12); Defendant's Motion to Stay Case Pending IPR Petition (5/31/13); Plaintiff's Motion to Compel Entry of Protective Order (6/18/13) | Initial Disclosures (4/18/13); Defendant's Objections & Responses to ROGs & RFPs (7/1/13) (little substance pending entry of protective order); Plaintiff's Objections & Responses to ROGs & RFPs (7/1/13) |

| Defendants | File Date | Service | Extensions | Settlement Discussions | Answer Date | Motions or Review Requests | Discovery |
|---|---|---|---|---|---|---|---|
| Seoul Semiconductor | 10/17/12 | Waived (11/16/12) | 1/18/13 (**63 Days**)<br><br>12/26/12 (**34 Days**)<br><br>3/7/13 (**60 days**) | San Francisco (2/10/13);<br><br>Dallas (3/7/13)-cancelled | Semiconductor Inc. & Ltd. (5/17/13) | Seoul Optodevice Motion for Extension of Time to Answer (5/15/13);<br><br>Seoul Optodevice's Motion to Dismiss for Lack of Jurisdiction (5/24/13);<br><br>Defendants' Motion to Stay Pending IPR (6/27/13);<br><br>Joint Proposed Scheduling Order – Defendants seeks postponement of scheduling until after (presumed) stay lifted (7/12/13);<br><br>Defendants' Petition for IPR(7/23/13) | |

| **Defendants** | **File Date** | **Service** | **Extensions** | **Settlement Discussions** | **Answer Date** | **Motions or Review Requests** | **Discovery** |
|---|---|---|---|---|---|---|---|
| Epistar<br><br>Scheduling Conference (5/23/13) – Order of Consolidation with Everlight & Lite-On (6/4/13) | 12/14/12 | Foreign Entity - Refused Service. Obtained Service at Industry Conference (2/13/13) | 2/27/13 **(54 Days)** | N/A | 4/8/13 | Defendant's Petition for Inter Partes Review (5/22/13);<br><br>Defendant's Motion to Compel Plaintiff's Withdrawal of Third Party Subpoenas (5/28/13)<br><br>Plaintiff & Defendant LEDLight.com Motion for Entry of Judgment & Perm. Inj. (5/30/13)<br><br>Defendant's Motion to Stay Case Pending IPR Petition (5/31/13)<br><br>Plaintiff Entry of Protective Order (6/18/13) | Joint Proposed Scheduling Order (5/16/13)<br><br>Initial Disclosures (5/31/13)<br><br>Discovery Objections & Responses – Defendants & Plaintiffs (7/1/13) |

| **Defendants** | **File Date** | **Service** | **Extensions** | **Settlement Discussions** | **Answer Date** | **Motions or Review Requests** | **Discovery** |
|---|---|---|---|---|---|---|---|
| Lite-On | 12/14/12 | Waiver (1/29/13) | 4/15/13 (**60 days**) | Taiwan (1/21/13) | 4/15/13 | Defendant's Petition for Inter Partes Review (5/22/13); Defendant's Motion to Stay Case Pending IPR Petition (5/31/13) Plaintiff Entry of Protective Order (6/18/13) | Joint Proposed Sched. Order (5/16/13) Initial Disclosures (5/31/13) Discovery Objections & Responses – Defendants & Plaintiffs (7/1/13) |
| Samsung | 3/21/13 | Waiver (**4/24/13**) (**60 Days**) | 4/24/13 (**90 days**) | Korea (1/23/13); Tel. Conf: (2/10/13); (2/13/13); & (2/25/13) | 7/23/13 | None | None |
| Amazon | 5/2/13 | Executed (5/10/13) | 5/31/13 (**14 days**) | N/A | 6/14/13 | | Joint Scheduling Report – Defendant wants delayed discovery pending case against Mfg. |

| **Defendants** | **File Date** | **Service** | **Extensions** | **Settlement Discussions** | **Answer Date** | **Motions or Review Requests** | **Discovery** |
|---|---|---|---|---|---|---|---|
| Arrow (Distributors) Settled with three Defendants: Vyrian, Sierra IC, & Verical | 5/3/13 | Executed (5/7/13; 5/9/13; 5/11/13; 5/15/13; & 6/3/13) | 5/24/13 (**18 days**) | None | 6/12/13; & 6/27/13 | Various Motions for Assented Judgment & Permanent Injunction as well as Motions to Strike  Defendants Motion to Stay (6/25/13) | Joint Scheduling Report (7/12/13) – Defendants seek continuance of 30 days or until after requested stay |
| LEDLight.com  SETTLED | Severed & refilled  6/6/13 | | | | | Motion For Final Judgment Granted | None |
| Apple | 7/3/13 | Executed (7/7/13) | None | None | 8/2/13 | None | None |
| LG | 8/1/13 | Not Served Yet | None | None | n/a yet | None | None |
| HP | 8/1/13 | Not Served Yet | None | None | n/a yet | None | None |

Dated: August 5, 2013              Respectfully submitted,


                        /s/ *Eve L. Henson*
                        Erik Paul Belt, BBO #558620
                        EBelt@mccarter.com
                        Kelly A. Gabos, BBO #666219
                        kgabos@mccarter.com
                        McCarter & English, LLP
                        265 Franklin Street
                        Boston, Massachusetts 02210
                        Telephone: (617) 449-6506
                        Facsimile: (617) 607-6035

                        Michael W. Shore (Texas 18294915)
                        mshore@shorechan.com
                        Alfonso G. Chan (Texas 24012408)
                        achan@shorechan.com
                        Eve L. Henson (Texas 00791462)
                        ehenson@shorechan.com
                        Andrew M. Howard (Texas 24059973)
                        ahoward@shorechan.com
                        **SHORE CHAN DEPUMPO LLP**
                        901 Main Street, Suite 3300
                        Dallas, Texas 75202
                        Telephone (214) 593-9110
                        Facsimile (214) 593-9111

                        **COUNSEL FOR PLAINTIFF**
                        **TRUSTEES OF BOSTON UNIVERSITY**


## CERTIFICATE OF SERVICE

     The undersigned certifies that the forgoing document, which was filed through the ECF system, will be sent electronically to the registered participants as identified on the Notice of Electronic Filing.


                        */s/ Eve L. Henson*
                        Eve L. Henson